## Fielding v. Fielding

*Tamera Ochs Rothschild,* for plaintiff.

THOMAS, *S.J.,* July 23, 1991—This divorce action was filed April 23, 1990, requesting a divorce on the basis that the marriage is irretrievably broken and the parties have been living separate and apart since April 1, 1989. Service was effectuated by registered mail on April 27, 1990. No ancillary issues were pled in the divorce complaint.

On July 11, 1991, the court was presented with a "petition for entry of an agreement" with an attached 10-page agreement reached by the parties resolving a multiplicity of ancillary matters including ultimate distribution of the proceeds from a *prospective* sale of the marital residence, additional cash payments to the wife, *prospective* transfer of motor vehicles, mutual pension releases, a child

support obligation imposed upon the husband, a waiver of alimony claims and payment of the parties' attorney fees. The last paragraph of the agreement provides that it may be submitted to the Court of Common Pleas of Crawford County or any other court of competent jurisdiction, for the purpose of being entered as an *order of court* and having the same force and effect as if entered after a full hearing.

## DISCUSSION

We note initially that neither party has filed the requisite affidavits of consent and there is no request that the court enter an uncontested section 201(c) or 201(d) divorce at this time. It seems obvious that the parties have reached an agreement regarding the ancillary issues naturally flowing from the dissolution of the marriage and we find no fault with them reducing their agreement to writing. However, the problem arises when they wish their agreement to have the status of a court order so that upon the actual or alleged breach of any condition of the agreement, the offended party could avoid the complexities of filing a civil breach of contract action and instead resort immediately to filing a petition for contempt. It is axiomatic that a contempt of court finding has the potential of far more serious consequences than a court finding in an ancillary proceeding that the terms and conditions of a written contract have been violated.

Obviously the legislature, in adopting and amending the Divorce Code, wished to encourage resolution of ancillary divorce matters through agreements of the parties. Present section 3105 (23 Pa.C.S. §3105—formerly section 401.1) provides as follows:

"(a) *Enforcement*—A party to an agreement regarding matters *within the jurisdiction of the court*

under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement." (emphasis added)

However, before such agreements can be entertained by the court and given the status of court orders, the court must have jurisdiction over the subject matter of the agreement. Thus, 23 Pa.C.S. §3104, delineating court jurisdiction, provides as follows:

"(a) *Jurisdiction*—The courts shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages and shall determine, in conjunction with any decree granting a divorce or annulment, the following matters, *if raised in the pleadings,* and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof:. . ." (emphasis added)

Thus, with regard to this divorce matter now before us, this court has no jurisdiction over the ancillary matters resolved by the agreement. This court therefore has no authority to elevate this agreement to the status of a legal court order.

## ORDER

And now, July 23, 1991, this court having determined that it has no jurisdiction to resolve by court order, the ancillary issues related to this divorce action, we direct the prothonotary not to file said petition and agreement and return the same to counsel for plaintiff.